FILED
U.S. DISTRICT COURT

A 10 38

R. aux

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

ALONZO MOREFIELD, JR.,          :
                                 :

        Plaintiff,          :

                                   :

     vs.          :          CIVIL ACTION NO.: CV607-010

                                   :

HUGH A. SMITH, Warden, individually          :
and STEVE DUPREE, Unit Manager,          :

                                   :

        Defendants.          :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Hays State Prison has filed a 42 U.S.C. § 1983 action contesting certain conditions of his confinement while he was incarcerated at Georgia State Prison ("GSP"). Defendants Smith and Dupree filed a Motion for Summary Judgment. Plaintiff has filed a Response. For the reasons which follow, Defendants' Motion for Summary Judgment should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendant Hugh A. Smith, GSP Warden at all times relevant to this case, assigned him to involuntary protective custody ("IPC"), also known as administrative segregation, for a period of three years with a "racist, retaliatory, prejudicial" motive. (Doc. No. 1, p. 7). Plaintiff further asserts that all of his property was seized during his stay in IPC. Plaintiff contends that while in IPC, he was unable to

freely practice his religion. Plaintiff also names GSP Unit Manager Steve Dupree as a Defendant, asserting that Dupree has been on notice of the action taken against Plaintiff but has failed to intervene.[1]

Defendants Smith and Dupree assert that Plaintiff's claims are barred by the statute of limitations. Defendants further assert that Plaintiff failed to exhaust his administrative remedies regarding his religious freedom claims. Defendants contend that Plaintiff's due process, equal protection, and religious freedom claims all fail on the merits. Defendants further contend that they are entitled to qualified immunity. Defendants aver that they are entitled to Eleventh Amendment immunity. Finally, Defendants assert that they may not be held vicariously liable.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

---

[1] In his original Complaint, Plaintiff set forth additional allegations that GSP officials have been opening and reading his legal mail outside his presence, and that he has been denied an institutional transfer request. By his Response and Motion to Amend Complaint, however, Plaintiff has abandoned these claims. (Doc. No. 18, p. 1).

of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION OF AUTHORITY

### I.   Eleventh Amendment Immunity

Plaintiff filed his cause of action against Defendants Smith and Dupree in their individual and official capacities. A lawsuit against prison officials in their official capacities is no different from a suit against the government itself; such defendants are immune. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). To the extent Plaintiff wishes to pursue his claims against Defendants Smith and Dupree in their official capacities, these claims should be dismissed.

## II.    Exhaustion of Administrative Remedies

Defendants Smith and Dupree assert that inmates may not bring a § 1983 action concerning prison conditions until all administrative remedies are exhausted. (Doc. No. 125, p. 11).  Defendants contend that of the sixty-nine grievances Plaintiff filed while at GSP, only one grievance relates to his religious freedom claims. (Id. at 12).  Defendants further contend that this grievance is currently on hold while Plaintiff's prior grievances are addressed.  (Id.).    Defendants assert that Plaintiff has not exhausted his administrative remedies with regard to his religious freedom claims. (Id.).    Plaintiff contends that he filed a grievance regarding the denial of his religious rights on or about August 20, 2003, and it was rejected by the GSP grievance coordinator.

Title 42, United States Code, § 1997e(a), as amended by § 803 of the Prison Litigation Reform Act of 1995 (PLRA), sets forth the procedures a prisoner must follow to gain access to the courts. Id.  Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002), the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  Id. at 523, 122 S. Ct. at 987.  Thus, even when the prisoner is seeking relief not provided for under the grievance process, exhaustion is still a prerequisite to his filing suit.  Id. at 524, 122 S. Ct. at 988; Booth v. Churner, 532 U.S. 731, 732, 121 S. Ct. 1819, 1821 (2001).  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. See id.

The record establishes that the Georgia Department of Corrections adopted a three-step grievance process in Standard Operating Procedure ("SOP") IIB05-0001. The first step requires an inmate to file a written informal grievance no later than ten calendar days from the date the inmate knew, or should have known, of the facts giving rise to the grievance. If dissatisfied with the response to the informal grievance, an inmate may file a formal grievance within five business days of the inmate's receipt of the written resolution of his informal grievance. If the inmate is still dissatisfied with the response, he can file an appeal of the formal grievance with the Commissioner's Office within five business days from the date he receives the warden's response to his formal grievance. (Doc. No. 126, pt. 7). Defendant Smith submitted an affidavit in support of his Motion for Summary Judgment. (Doc. No. 126, pt. 18).[2] Defendant Smith avers that inmates may file one informal grievance per calendar week, but are limited to two formal pending grievances at the institutional level. (Id. at 10). Defendant Smith further avers that any grievance filed beyond the two grievance limit is assigned a number and placed on hold until one of the active grievances has been responded to. (Id.). Defendant Smith asserts that inmates have the ability to prioritize their grievances by dismissing an active or pending grievance in order to expedite a response to a subsequently filed grievance. (Id.). Anessa Kirkley is the Grievance Coordinator at GSP. (Doc. No. 126, pt. 18, p. 1). In her affidavit, she averred that of the no less than sixty-nine formal

---

[2] Defendants submitted Defendant Smith's affidavit as Exhibit B; Defendant Dupree's affidavit as Exhibit C; and Anessa Kirkley's affidavit as Exhibit D; however, the Court docketed all three as Document 126, Part 18. To avoid confusion, the Court will utilize the docket citation and the page numbers on the individual affidavits.

grievances Plaintiff filed since August 3, 2003, only one grievance related to his religious freedom claims. (Id. at 6-7). Kirkley further averred that the formal grievance relating to this claim is currently on hold, and as such, Plaintiff has not exhausted his administrative remedies regarding his religious freedom claims. (Id. at p. 7).

To show that he exhausted all available administrative remedies regarding his religious freedom claims, Plaintiff must establish that he filed an informal grievance, formal grievance, and an appeal of the formal grievance with the Commissioner's Office. A review of Plaintiff's "Inmate Grievance History" shows only one grievance, filed on April 26, 2007, regarding his religious freedom claims. This grievance is currently on hold while the GSP Grievance Office addresses Plaintiff's prior grievances. The record contains no evidence of Plaintiff filing an appeal of any formal grievance with the Commissioner's Office regarding a religious freedom claim. Thus, it appears that Plaintiff failed to exhaust his available administrative remedies pertaining to any alleged violations of his religious freedom rights prior to filing his Complaint. Plaintiff's religious freedom claims should be dismissed, without prejudice, due to Plaintiff's failure to exhaust his administrative remedies.

## III. Deprivation of Property

Defendants Smith and Dupree assert that Plaintiff was not deprived of his property in violation of his Fourteenth Amendment due process rights. (Doc. No. 125, pp. 16-17). Defendants contend that Plaintiff's substantive due process rights were not violated by the alleged deprivation of property because Plaintiff has a history of stockpiling personal items and any confiscation of his property was done to maintain the safe operation of the facility. (Id. at 16). Defendants further contend that there was no

procedural due process violation because Plaintiff has not utilized an adequate state law remedy available to him. (Id. at 16-17). Plaintiff asserts that Defendants Smith and Dupree were responsible for the unlawful confiscation of his property. (Doc. No. 170, p. 3).

A substantive due process violation occurs when executive action can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense. County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717 (1998) (citing Collins v. Harker Heights, 503 U.S. 115, 112 S. Ct. 1061 (1992)). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847, 118 S. Ct. at 1717.

An inmate states a cognizable Fourteenth Amendment procedural due process claim when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Supreme Court has held that the negligent or intentional deprivation of property by a state employee does not violate the Fourteenth Amendment Due Process Clause if a meaningful, post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984). "To determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 983 (1990). Any deprivation of personalty is a tort for which an action lies. O.C.G.A. § 51-10-1.

The record reveals that SOP IIB06-0001 sets forth the inmate personal property standards at GSP. (Doc. No. 126, pt. 15). SOP IIB06-0001 places limits on the number and type of personal items inmates may keep. (Id.). These limits are: only those batteries needed to operate a radio; eight books, magazines, and newspapers (excluding legal books); one cap; two pencils; two pens; twenty photographs; five pairs of socks; two sweatshirts; two towels; and eight pairs of under shorts. (Doc. No. 126, pt. 7). Defendant Smith averred that an inmate's property is limited to quantities which can be neatly stored in the inmate's locker or storage area, so long as the property does not create a fire, sanitation, security, or housekeeping problem. (Doc. No. 126, pt. 18, p. 7). Defendant Smith further averred that Plaintiff has a history of stockpiling items such as magazines and personal mail. (Id.). The following items were confiscated from Plaintiff: on August 6, 2003, a sweatshirt, wave cap, and bottle of body oil; on August 22, 2003, six socks, three sweatshirts, nine pair of under shorts, one set of pajamas, one cup, three towels, miscellaneous business cards, a bottle of lotion, one mini radio, fifteen used batteries, five pens, and thirteen magazines; on September 10, 2003, two maps, two computer disks, six pens, sixty-eight magazines, ten newspapers, and seven books; on October 17, 2003, one skull cap, one bowl, one hundred and fourteen photos, one wash cloth, one toothbrush and holder, one pair of broken headphones, three pencils, nine pens, nineteen magazines, and one book. (Id. at 7-8).

The evidence before the Court reveals that Plaintiff has a history of stockpiling personal items in his cell. The record establishes that many of the personal items confiscated from Plaintiff were in violation of SOP IIB06-0001. The record reveals that otherwise allowable property may be confiscated to ensure the safe operation of the

AO 72A
(Rev. 8/82)

facility. Thus, any alleged deprivation of Plaintiff's property by Defendants Smith and Dupree are not the type of arbitrary, egregious executive actions that characterize a substantive due process violation. The state remedy available to Plaintiff by O.C.G.A. § 51-10-1 for the alleged unwarranted conversion of his property provides him with all the relief warranted. Consequently, even if Plaintiff's allegations are true, the presence of a satisfactory state remedy leads to a conclusion that there was no procedural due process violation. As such, Plaintiff's claims for the alleged illegal deprivation of his property in violation of his Fourteenth Amendment due process rights should be dismissed.

## IV. Administrative Segregation

Defendants Smith and Dupree contend that Plaintiff must show a liberty interest in freedom from assignment to administrative segregation to establish a violation of his Fourteenth Amendment due process rights. (Doc. No. 125, p. 13). Defendants aver that Plaintiff was confined in IPC in conditions substantially similar to those experienced by the prison's general population and such confinement does not implicate a liberty interest. (Id.). Defendants contend that the extended duration of Plaintiff's stay in administrative segregation did not unexpectedly exceed his sentence in a manner that would evoke due process protections. (Id. at 14). Defendants further contend that Plaintiff's assignment to administrative segregation was not a pretext for indefinite confinement because his assignment status received periodic reviews. (Id. at 15).

Plaintiff asserts that he did nothing to warrant his placement in administrative segregation. (Doc. No. 170, p. 1). Plaintiff avers that he does not have a history of violent and manipulative behavior as alleged by Defendants. (Id. at 2). Plaintiff further

avers that the GSP staff falsified his security classification due to Defendant Smith's desire to oppress him. (Id.). Plaintiff contends that Defendant Smith has the authority to override any decisions made by the Classification Committee and the SOPs for the prison are frequently ignored. (Id.). Plaintiff further contends that the conditions in administrative segregation are significantly worse than the conditions in general population. (Id.). Plaintiff avers that housing in segregation limits: law library visits, recreation, commissary privileges, religious services, and possession of property. (Id.). Plaintiff alleges that Defendant Smith's affidavit failed to say that Plaintiff received a copy of the IPC assignment memo, which is a due process violation. (Id. at 3).

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F. 3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. amend. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290-91 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300(1995)).

In Sandin, the Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472, 115 S. Ct. at 2293. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit.

Id. 515 U.S. at 475, 115 S. Ct. at 2296. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. 515 U.S. at 485, 115 S. Ct. at 2301. The Court determined that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. 515 U.S. at 486, 115 S. Ct. at 2301. The Court concluded that Connor was not entitled to due process protections because the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id.

It must first be determined whether Plaintiff has a liberty interest in freedom from confinement in administrative segregation. A liberty interest may arise from the Due Process Clause of the Fourteenth Amendment itself or from state law. Sandin, 515 U.S. at 483-484, 115 S. Ct. at 2300.[3] The Due Process Clause does not create a right for inmates to remain in the general population. Sandin, 515 U.S. at 480, 115 S. Ct. at 2298. The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed. Id. (citing Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869 (1979)). Prisoners do not shed all constitutional rights at the prison gate, but "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485, 115 S. Ct. at 2301 (citing Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 97 S. Ct. 2532, 2537

---

[3] The Supreme Court has provided some examples of when the conditions of confinement "exceeded the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin, 515 U.S. at 483-484, 115 S. Ct. at 2300. One case involved an inmate's involuntary transfer to a mental hospital. Vitek v. Jones, 445 U.S. 480, 100 S. Ct. 1254 (1980). Another involved the involuntary administration of psychotropic drugs to an inmate. Washington v. Harper, 494 U.S. 210, 110 S. Ct. 1028 (1990).

(1977)).   Under certain circumstances, administrative segregation is a necessary limitation of privileges and rights that incarceration demands. Al-Amin v. Donald, 165 Fed. Appx. 733, 738 (11th Cir. 2006) (not selected for publication in the Federal Reporter).   Confinement to administrative segregation under conditions substantially similar to those experienced by the general population does not implicate liberty interests in the way that involuntary transfer to a mental hospital or involuntary administration of psychotropic drugs does. Id.   Thus, Plaintiff's assignment to administrative segregation does not implicate a liberty interest created by the Due Process Clause itself because "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration" and is not independently protected by the Due Process Clause. See Hewitt, 459 U.S. at 468, 103 S. Ct. at 869.

State law may also create liberty interests which are protected by the Due Process Clause. Sandin, 515 U.S. at 483-4, 115 S. Ct. at 2300.   However, these interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. 515 U.S. at 484, 115 S. Ct. at 2300.   In determining whether confinement to administrative segregation presents the type of "atypical and significant hardship" in which a liberty interest is created, the court should consider the extent to which the conditions of administrative segregation differ from other prison conditions and the amount of time the inmate was placed in administrative segregation. See Sandin, 515 U.S. at 486, 115 S. Ct. at 2301 (no liberty interest created when disciplinary confinement did not exceed similar confinement in duration or degree of restriction).

Defendant Smith averred that administrative segregation at GSP is a non-punitive assignment wherein the inmate has the same privileges and rights inmates in general population have, except those with which would put him in contact with general population inmates and the inmate may be limited to showering or shaving three times a week. (Doc. No. 126, pt. 18, pp. 2-3). Smith observed that Plaintiff was placed on involuntary protective custody with extra precautions status ("IPC/PCPC") on June 1, 2005. (Id. at 3). An IPC/PCPC inmate does not exit his cell unless escorted by staff members and does not have contact with other inmates during out of cell activities; but otherwise has all the privileges afforded general population inmates. (Id.). SOP IIB09-0001 regulates administrative segregation at GSP. (Doc. No. 126, pt. 5). It provides that cells in administrative segregation shall be furnished in a manner similar to the general population and food shall be the same quality and quantity that is provided in the general population. (Id. at 5-6). Inmates in administrative segregation shall receive the same visiting and correspondence privileges accorded to the general population and no restrictions are placed upon an inmate's contact with courts or legal counsel. (Id. at 6). Inmates shall be assigned all personal property consistent with the length of assignment and security needs of the unit. (Id.). Inmates may order items from the commissary, but the items may be withheld if determined by the correctional supervisor to be a threat to the security of the unit. (Id.). Exercise is available for a minimum of five hours per week. (Id.).

The record reveals that the conditions of Plaintiff's confinement in administrative segregation are not significantly different from those experienced by the general prison population. With a few exceptions, Plaintiff is afforded the same rights and privileges as

the general population. The types of limitations alleged by Plaintiff are not an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prison life.

In addition to the conditions imposed upon the inmate, the duration of confinement to administrative segregation is an important factor to consider when determining whether a deprivation constitutes an "atypical and significant hardship." There is no standard for the number of days or months at which a deprivation necessarily becomes an "atypical and significant hardship." However, the extended duration of Plaintiff's confinement in administrative segregation distinguishes his case from many other disciplinary or administrative segregation cases in which no liberty interest was violated. See Sandin, 515 U.S. at 486, 115 S. Ct. at 2301 (holding constitutional the plaintiff's disciplinary segregated confinement for thirty days); Rodgers v. Singletary, 142 F. 3d 1252 (11th Cir. 1998) (holding no liberty interest existed when plaintiff was kept in administrative confinement for two months). But the Third Circuit has held that the confinement of an inmate to administrative segregation for a period of eight years was constitutional because the inmate received due process via periodic reviews and the right to be heard. Shoats v. Horn, 213 F. 3d 140 (3d Cir. 2000).[4]

In Al-Amin v. Donald, an inmate convicted of murdering one Fulton County deputy sheriff and wounding another was confined to administrative segregation at GSP for an aggregate period of approximately three years. 165 Fed. Appx. 733. The inmate remained confined in administrative segregation when the Eleventh Circuit Court of Appeals heard his case. Al-Amin was assigned to administrative segregation because

---

[4]But see Williams v. Fountain, 77 F. 3d 372, 374 n. 3 (11th Cir. 1996). Although not an issue before the court, Williams assumed that assignment to solitary confinement for a year was a liberty deprivation. However, the court did not discuss the severity of the solitary confinement conditions in relation to the ordinary incidents of prison life.

AO 72A
(Rev. 8/82)

of the notoriety of his case, he posed an escape risk, and he was considered a threat to the security of the facility because of his leadership qualities and a history of opposing the government and supporting violence. Id. at 734-735. Al-Amin held that the plaintiff's assignment to administrative segregation for a period of three years did not exceed his sentence in a manner that would evoke the protections of the Due Process Clause because the confinement occurred under conditions substantially similar to those experienced by the general population and his assignment had been given periodic review. Id. at 738.

In the case sub judice, Plaintiff was in administrative segregation for approximately four years during the ordinary course of his imprisonment. When considered in light of the conditions of his confinement, which are generally equivalent to general population conditions, and that the length of his sentence was not extended by his stay in administrative segregation, this duration does not tip the balance towards finding an atypical and significant hardship. See Al-Amin, 165 Fed. Appx. at 738. Thus, even considering the extended duration of his assignment, Plaintiff does not have a liberty interest in freedom from confinement in administrative segregation.

Nevertheless, even if Plaintiff has a liberty interest in freedom from administrative segregation, he has received all the process he is due. Prison officials are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hewitt, 459 U.S. at 472, 103 S. Ct. at 872, modified on other grounds by Sandin, 515 U.S. at 481, 115 S. Ct. at 2299 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the

language of the state prison regulation). As a result of this broad discretionary authority, the decision that an inmate poses a security threat and should be placed in non-punitive administrative segregation is subject to limited procedural safeguards. Prison officials are required to engage only in an informal, non-adversarial review of any information supporting, or opposing, the inmate's administrative confinement. This review should take place within a reasonable time after the inmate is confined. Hewitt, 459 U.S. at 472, 103 S. Ct. at 872. "An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Id., 459 U.S. at 476, 103 S. Ct. at 874. The requirements of the Due Process Clause are satisfied if this occurs and the decision maker reviews the charges and any available evidence. Id. The Court has cautioned, however, that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." Id., 459 U.S. at 477 n. 9, 103 S. Ct. at 874 n. 9.

The evidence before the Court reveals that the regulations for the administrative segregation process at GSP are as follows: When placement in administrative segregation is involuntary, the warden must ensure that the Classification Committee holds a formal hearing within 96 hours of the inmate's placement in segregation. (Doc. No. 126, pt. 5, p. 4). At the time of placement in administrative segregation, the inmate is provided, in writing, the reasons for his placement. (Id.). The inmate may request that an employee, willing to represent the inmate, advocate on his behalf at the initial hearing. (Id.). The inmate may also request that witnesses be called, although it

remains in the Classification Committee's discretion to call any witnesses. (Id.). The Classification Committee must review the status of all inmates in administrative segregation once every thirty days. (Id. at 8). The Committee shall review the inmate's administrative file and consider the original reason for segregating the inmate, as well as the inmate's behavior during segregation. (Id.). If the Committee determines that the inmate should remain in administrative segregation, the inmate may appeal to the warden. (Id.).

These procedures satisfy the constitutional process required by the Supreme Court in Hewitt. 459 U.S. 460, 103 S. Ct. 864. The record establishes that the SOP procedures were followed here. Defendant Smith averred that Plaintiff was placed in administrative segregation by Hays State Prison on August 1, 2003, pending investigation for writing threatening letters and was transferred to GSP on August 5, 2003, due to his status as a Mental Health Level II inmate and his possible involvement in an escape attempt. (Doc. No. 126, pt. 18, p. 4). Plaintiff was placed in administrative segregation upon his arrival at GSP pending the completion of the admissions and orientation process and advised of the reasons for this assignment. (Doc. No. 126, pt. 19, p. 5). All allowable property accompanied Plaintiff to his cell. (Id.). Defendant Smith asserted that following the completion of the admissions and orientation process on August 7, 2003, Plaintiff underwent a security reclassification by the Classification Committee and his security status was raised from close to maximum. Plaintiff was made aware of his reclassification the same day. (Doc. No. 126, pt. 18, p. 4-5). Plaintiff was placed in administrative segregation for his protection and for the safe operation of the institution due to his manipulative behavior, his documented escape risk, and his

high profile convictions.[5] Defendant Smith concurred with the Committee's findings. (Id. at 5). Plaintiff remained in administrative segregation for the same reasons he was placed there, in addition to his stated involvement in the high profile case of inmate Sidney Dorsey, a former Dekalb County Sheriff convicted of murder. (Id.). Plaintiff filed a grievance on September 23, 2003, contesting his security level increase. Defendant Smith denied this grievance because an investigation found no evidence to support the allegation that Plaintiff's security level was improperly increased. Plaintiff appealed and the appellate authority upheld the denial. (Id. at 6). While Plaintiff's allegation that he did not receive a thirty day review in September of 2003 was substantiated and addressed, Plaintiff has received an administrative hearing review of his status every thirty days since then with the opportunity to appeal the decision to the warden. (Id.). The Classification Committee recommended that Plaintiff remain in administrative segregation at each of his reviews. Plaintiff appealed many of these reviews to Defendant Smith, but each appeal was denied because Plaintiff's security level and assignment to administrative segregation were deemed appropriate. (Id.). Because GSP afforded Plaintiff all that is procedurally required for confinement in administrative segregation, Defendants Smith and Dupree are entitled to summary judgment and Plaintiff's claims regarding his assignment to administrative segregation should be dismissed.

---

[5] Plaintiff was convicted of kidnapping and robbing a motorist while impersonating a police officer; and assaulting, robbing, and kidnapping a Dekalb County jailer while attempting to escape from the Dekalb County Jail while impersonating a Dekalb County jailer. (Doc. No. 126, pt. 18, p. 4).

## V.     Equal Protection

Defendants Smith and Dupree contend that a government actor cannot violate a plaintiff's equal protection rights unless a defendant has the intent to discriminate. (Doc. No. 125, p. 17).   Defendants further contend that there is no evidence demonstrating that they intended to discriminate against Plaintiff for any reason. (Id. at 18). Defendants assert that Plaintiff was never treated differently than other inmates due to his religious beliefs or because he is an African-American. (Id. at 17).     Plaintiff alleges that he was placed in administrative segregation because Defendant Smith's racial prejudice led him to oppress Plaintiff in any way possible. (Doc. No. 170, p. 2).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394 (1982)). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974).  "To establish an equal protection claim, a prisoner must demonstrate that: (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F. 3d 944, 946-947 (11th Cir. 2001).  In other words, a plaintiff must establish that a discriminatory intent

motivated some disparate treatment. E & T Realty v. Strickland, 830 F. 2d 1107, 1112 n. 5 (11th Cir. 1987).

Here, Plaintiff alleges that he was discriminated against due to his status as an African-American prisoner. However, Plaintiff fails to allege, or provide any evidence of, disparate treatment between himself and a similarly situated individual. Even assuming that Plaintiff offered evidence establishing the existence of an identifiable, similarly situated inmate who was treated more favorably, he has offered nothing establishing that he was treated differently because Defendants were intentionally discriminatory. Bare allegations of disparate treatment or discriminatory intent are not sufficient to support an equal protection claim. GJR Inc. v. County of Escambia, 132 F. 3d 1359, 1367-1368 (11th Cir. 1998). Plaintiff has offered no evidence of disparate treatment between himself and a similarly situated individual and nothing outside of his conclusory statement that Defendant Smith oppressed him for racially discriminatory reasons. Thus, Defendants Smith and Dupree are entitled to summary judgment and Plaintiff's equal protection claim should be dismissed.

It is unnecessary to address the remaining grounds of Defendants' Motion.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Motion for Summary Judgment filed by Defendants Smith and Dupree be **GRANTED**. Plaintiff's religious freedom claims against these Defendants should be **dismissed**, without prejudice, due to Plaintiff's failure to exhaust his available administrative remedies prior to filing his Complaint. Plaintiff's remaining should be **dismissed**, with prejudice.

**SO REPORTED** and **RECOMMENDED**, this _24th_ day of September, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE